IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **EMMITT N. JACKSON, III**, et al. | : |
| | : |
| Plaintiffs, | : |
| | : Civil Action No. MJG-96-751 |
| v. | : |
| | : |
| **THE UNITED STATES OF AMERICA,** | : |
| | : |
| Defendant. | : |

## PLAINTIFFS' MOTION TO REOPEN CASE
## AND FOR ORDER RE DIRECT DONOR DISCOVERY

Plaintiffs Emmitt N. Jackson, III, et al., by counsel, hereby file this Motion To Reopen Case (now held in administrative suspense) And For Order Re Direct Donor Discovery and as cause therefor respectfully refers the Court to the attached Exhibits and Statement of Grounds & Authorities.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL
  PORDY & ECKER, P.A.

*/s/ Ashley Joel Gardner*
Ashley Joel Gardner, Esq.
(Federal Bar No. 9207)
11921 Rockville Pike, Suite 300
Rockville, Maryland 20852
(301) 230-5200
*Counsel for Plaintiff Emmitt N.
Jackson, III, et al.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of May, 2003, a copy of **Plaintiff's Motion to Reopen Case and for Order re: Direct Donor Discovery** and **Statement of Points and Authorities In Support Thereof** was sent via first-class, postage prepaid, U.S. Mail to:

Madeline Henley, Esquire
UNITED STATES ATTORNEY
United States Department of Justice
Civil Division, Torts Branch
Ben Franklin Station, P.O. Box 888
Washington, D.C. 20004
*Attorneys for Defendant*

_____
Ashley Joël Gardner

E:\lawyers\40\mot to reopen-cover pg.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMMITT N. JACKSON, III, et al.         :
                                        :
         Plaintiffs,                    :
                                        :   Civil Action No. MJG-96-751
    v.                                  :
                                        :
THE UNITED STATES OF AMERICA,           :
                                        :
         Defendant.                     :


**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION TO REOPEN CASE AND FOR ORDER RE
<u>DIRECT DONOR DISCOVERY</u>**

Plaintiffs, by counsel, in support of their Motion To Reopen Case And For Order Re Direct Donor Discovery, hereby respectfully submit the following Statement of Grounds & Authorities.

<u>**RELEVANT PROCEDURAL BACKGROUND**</u>

1.      The gravamen of the Complaint that Plaintiff Emmitt N. Jackson, III (Emmitt) is HIV-positive as a proximate result of the Government's administration to him of HIV-contaminated blood products at a military hospital. The primary issue in the case is causation.

2.      On or about September 14, 1999, the Government filed a Motion for Summary Judgment on the causation issue and attached thereto *redacted* copies of blood donor records which supposedly indicated the non-causative nature of the blood products administered to Emmitt by the Government. Plaintiffs responded by filing, *inter alia*, a Motion for In Camera Inspection of *unredacted* versions of those blood donor records (the Documents).

3.      On December 8, 1999, the Court issued an Order in which it granted Plaintiffs' Motion for In Camera Inspection of Documents and declined to rule on the Government's Motion for Summary Judgment ("the Order").

4.      On January 4, 2000, pursuant to Court Order, Plaintiffs' counsel inspected the unredacted Documents. On February 8, 2000, pursuant to Paragraph 4(a) of the Order, Plaintiffs filed a pleading entitled "Results of Plaintiffs' In Camera Inspection of the Documents." ***Because those Inspection Results are material to the disposition of this Motion for Limited Direct Donor Discovery, they are summarized here:***

> **A)**      Far from ruling out Government-supplied blood products as the cause of the minor Plaintiff's HIV infection, the Documents tended to establish causation by evidencing the following facts: The Donor Card for Donation # 2150885 (collected on July 25, 1989 and ultimately supplied to Emmitt) *was marked "Contaminated Waste."* See Donor Card Tab 4 to the Government's Summary Judgment Motion (the Government's Motion). ***Defendant did not HIV-test this donation because the Government intended to dispose of it.*** See Blood Processing Work Sheet at Tab 5 to the Government's Motion. Notwithstanding this, ***the Government administered Donation # 2150885 to the minor Plaintiff (Emmitt) on February 13, 1990, when he was six years old.*** See Pediatric Nursing Note at Tab 3 to the Government's Motion.
>
> **B.**      The Documents did not indicate whether a sample from Donation # 2150885 is available for re-testing and there has been, to date, no suggestion that it is. Consequently, the only way to determine whether the administration to Emmitt of Donation # 2150885 could have been HIV-causative is through HIV-tests on the Donor, who was identified by, *inter alia*, name and social security number in Tab 6 to the Government's Motion.[1] Although years has elapsed since Donation # 2150885 was collected on July 25, 1989, the Government has produced only *one* post-collection HIV test result for the Donor. See Tab 6. According to that single result, the Donor was HIV-negative on October 24, 1989, three months after Donation # 2150885 was collected. This Court may judicially notice the medical fact

---

[1] Pursuant to Court Order, Plaintiff's counsel was not permitted to (and did not) take notes concerning this information during the In Camera Inspection.

that it takes *six* months after onset of HIV-infection for an HIV-infected person to produce an HIV-positive blood test result. Consequently, the HIV-status of Donation #2150885 cannot be deduced without assessing information Defendant has not yet produced, i.e., results of HIV-tests on the Donor taken *after* January 25, 1990.[2]

5. **In February 2000, this Court issued an Order requiring the Government to attempt to contact the Donor to Donation # 2150885 and to obtain that Donor's HIV test result history.**

6. Thereafter, the Government sent several federal express letters addressed to the Donor at an Austin, Texas address. Plaintiffs were copied with those letters and thereby learned the name of the Donor in question. According to the Government, all such letters were eventually returned as undeliverable.

7. In April 2000, Plaintiffs suggested to the Government that the tenor of the letters appeared calculated to alarm the Donor and suggested that the Donor be informed in non-threatening terms why his HIV test result history was being requested and that he was

---

[2] In an attempt to avoid this type of follow-up, Defendant could not viably assert that, because the Donor allegedly tested HIV-negative on October 24, 1989, Donation #2150885 (collected in July 1989) would necessarily have tested HIV-negative had it been tested at all, which it indisputably was not. Defendant's argument would be that it cannot be held liable for administering blood which, although potentially HIV-infected, would have tested HIV-negative because it was collected during the six-month period following initial onset of the Donor's HIV-infection when the HIV blood-screening test may not produce a seropositive result. This "six month window" defense should have no application where, as here, it is undisputed that the potentially causative Donation (# 2150885) was marked "Contaminated Waste," should have been discarded a priori, and should never have been administered to Emmitt at all. *On the undisputed facts of this case, had Defendant complied with its duty to discard (rather than administer) Donation # 2150885, Emmitt would have been spared all potential consequences (both detectable and undetectable) of Donation # 2150885. Consequently, if Donation # 2150885 was HIV-contaminated and therefore causative-in-fact, the "six-month window defense" necessarily fails and legal causation necessarily exists.*

3

not in any legal trouble. Plaintiffs subsequently prepared such a letter for the Government to send to the Donor. On or about April 13, 2000, the Government sent that letter addressed to the Donor at the same address to which letters previously returned as undeliverable had been sent.

        8.        On June 7, 2000, realizing that it could take years to locate the Donor, the Court administratively closed this case for possible reopening pursuant to further Order of the Court upon application of any party before June 7, 2003. See Order of Court dated June 7, 2000, **Exh. A hereto**. Under the terms of the Order, the administrative closing of the case "shall not affect any rights of this parties in this or any other proceeding." See Order at ¶ 3.

    **B.**    **Motion To Reopen Case**

This Motion to Reopen the Case is filed pursuant to this Court's Order of June 7, 2000 and for the specific purposes contemplated in that Order. See Order, **Exh. A hereto**. Specifically, Plaintiffs respectfully request that this Court re-open this case because the Donor appears to have been located[3] by a professional tracing service engaged by Plaintiffs, and at an address other than that used by the Government when previously attempting to contact the Donor. Having undertaken to verify the accuracy of that address information, Plaintiffs now timely seek to reopen this case for purposes of: 1) obtaining a limited discovery Order requiring the Government, in consultation with Plaintiffs, to produce a letter requesting that the Donor produce his HIV test result history since 1989; and 2) pursuing all

---

[3] The person in question has the same name as the Donor and is of appropriate age given the facts of this case.

4

appropriate relief.

The legal principles underlying this request is well-established in this federal circuit, as elsewhere. Indeed, this Court previously applied them in February 200 when it ordered the Government to undertake to contact the Donor in this case. Under Fed.R.Civ.Pro. 26(b)(1), a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .". If the information sought is "reasonably calculated to the lead to the discovery of admissible evidence." Applying this Rule in situations where (as here) a blood donor was the sole source of information a plaintiff needed to establish his claim, the Fourth Circuit has held that such information is discoverable, as have other courts throughout the nation. See e.g. Watson v. Lowcountry Red Cross, 974 F.2d 482 (4th Cir. 1992); Gulf Coast Regional Blood Center. v. Houston, 745 S.W.2d 557 (Tex.App.1988); Belle Bonfils Memorial Blood Center v. The District Court, 763 P.2d 1003 (Colo 1988); Tarrant County Hospital District v. Hughes, 734 S.W.2d 675 (Tex. Ct.App.1987), cert. denied, 484 U.S. 1065 (1988).

In this case, the information sought from the donor will enable the minor plaintiff and his family to ascertain whether the Government's administration of blood products to him caused him to become HIV-infected. The information Plaintiffs seek is crucial (not merely relevant) to their ability to carry their burden of proof in this case. According to the Government, there is no other known source from which that information may be obtained. The information requested is restricted to the donor's HIV test results since the date (1989) the potentially causative donation was made. Because the request is so limited, its production will not unnecessarily invade the donor's personal life. In Watson, the Fourth

Circuit explained:

> To the extent that avoidance of embarrassment has a constitutional dimension in this context [i.e., blood donor discovery], it only involves the embarrassment and humiliation that might follow public disclosure that the donor is infected. See Belle Bonfils Mem. Blood Ctr. v. District Court, 763 P.2d 1003, 1012-13 (Col. 1988). Embarrassment and feelings of harassment flowing from the very act of answering the questions simply do not implicate a protectible interest under the Constitution. Cf. Whalen, 429 U.S. at 602, 97 S.Ct. at 878 (disclosure of private medical information to state health employees not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facts of health care.") At most, the invasion of the donor's privacy is minimal, and this interest is greatly outweighed by the plaintiff's need for the information and the related public interest in seeing that injuries are compensated.

Watson v. Lowcountry Red Cross, 974 F.2d at 482, 487.

Moreover, the Fourth Circuit confirmed in Watson that permitting the requested discovery will not jeopardize the nation's blood supply because a test to determine whether AIDS is present in blood donations has been approved and successfully used for many years (i.e., since April 1985, fifteen years ago). Consequently, by allowing discovery of the single Donor in this case, the Court will not open the floodgates of litigation to permit discovery of a multitude of donors nationwide. Because the HIV blood screening test has been used to HIV-screen all blood collected after April 1985, cases of this type are so rare that permitting the requested discovery will have no demonstrable societal implications.

Moreover, as the Fourth Circuit held in Watson, the plaintiff's need for the information is outweighed by the donor's privacy interest and/or the interest of society is assuring a safe and adequate blood supply. See also Sampson v. American National Red Cross, 139 F.R.D. 95, 99-100 (N.D. Tex. 1991) (permitting plaintiff's counsel to conduct in-person deposition of a living donor and to disclose donor's identity to plaintiff's expert on

ground that plaintiff's need to obtain information from unidentified donor was superior to blood supplier's interest in not disclosing identity of donor on public policy grounds.) To protect the identity of the Donor and the information to be provided by him, Plaintiffs propose the following:

    **1.** The name and location of the Donor and his HIV test results shall be filed with the Court and sealed. Only counsel for the parties will have access to these sealed documents.

    **2.** The Donor shall be referred to as Donor 2150885 during discovery unless otherwise ordered by the Court.

    **3.** The information provided by Donor 2150885 shall be destroyed at the final disposition of the case, unless otherwise ordered by this Court.

    **4.** The parties and their counsel shall be prohibited from disclosing the Donor's name or location, either directly or indirectly, to third parties, without further order of this Court.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
   PORDY & ECKER, P.A.

By _____
   Ashley Joel Gardner
   Fed. Bar No. 9207

11921 Rockville Pike, Third Floor
Rockville, Maryland 20852
(301) 230-5200
Attorneys for Plaintiffs

7